# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 17-CR-087 (FAB) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | SENTENCING HEARING |
| | ) | |
| FRANCISCO SEVERINO-PACHECO, | ) | |
| Defendant. | ) | |

TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
SAN JUAN, PUERTO RICO
Wednesday, July 12, 2017

APPEARANCES:

For the United States:
                    JONATHAN L. GOTTFRIED, AUSA
                    United States Attorney's Office
                    Torre Chardón, Suite 1201
                    350 Carlos Chardón Street
                    San Juan, PR 00918

For the Defendant:
                    ISABELLE C. ORIA-CALAF, AFPD.
                    Federal Public Defender's Office
                    Patio Gallery Building
                    241 Franklin D. Roosevelt Ave.
                    Hato Rey, PR 00918-2441

Produced by mechanical stenography; computer-aided
transcription

1          (PROCEEDINGS COMMENCED AT 10:05 A.M.)

2

3          THE CLERK:  Criminal Case No. 17-087, United States

4    of America versus Francisco Severino-Pacheco for Sentencing

5    Hearing.

6          On behalf of the Government, Assistant United

7    States Attorney Jonathan L. Gottfried.

8          On behalf of the Defendant, Assistant Federal

9    Public Defender Isabelle C. Oria-Calaf.

10          Defendant is present and assisted by the certified

11    court interpreter.

12          MR. GOTTFRIED:  Good morning, Your Honor.  The

13    Government is ready to proceed.

14          MS. ORIA-CALAF:  Good morning, Your Honor.  AFPD

15    Isabelle Oria on behalf of Mr. Francisco Severino-Pacheco.

16          THE COURT:  Ms. Oria, first of all, thank you for

17    your sentencing memorandum.  I have read it.

18          MS. ORIA-CALAF:  Thank you, Your Honor.

19          THE COURT:  Is there anything you would like to say

20    on behalf of Mr. Severino?

21          MS. ORIA-CALAF:  Yes, Your Honor.

22          THE COURT:  Or anything that you would like to

23    highlight from your sentencing memoranda?

24          MS. ORIA-CALAF:  Your Honor, first, I would like,

25    for purposes of clarity of the record, that the pre-sentence

1    report has Mr. Severino's 13-year-old-long partner's name

2    incorrect.  It's not Rendy.  It's Zeendy, Z-E-E-N-D-Y.

3            THE COURT:  We will make that change in the

4    pre-sentence investigation report.  Thank you.

5            MS. ORIA-CALAF:  Thank you, Your Honor.

6            Now, with regards to Mr. Severino, the Court has

7    already acknowledged that a sentencing memo was filed at

8    docket 23 and that the Court has considered it.

9            I would also like to acknowledge the presence of

10   Ms. Carmen Pacheco and Zeendy Crespo.  Carmen Pacheco is

11   Mr. Severino's mother.  She is here in support of her son.

12   And Zeendy is his partner for 13 years now.  She is also here

13   in support of Mr. Severino.

14           Now, Your Honor, we drafted all the reasons in

15   support of why we are requesting a guideline sentence in this

16   case in our sentencing memo, so we won't go over, but I would

17   like to address a point.  And it's with regards to

18   Government's sentencing memo.

19           Now, Your Honor, I will be treading very carefully

20   because I Your Honor is considering a very serious offense.

21   This is a very serious weapon to be carrying, but I need the

22   Court to note at least the following:

23           Now, on Government's sentencing memo, Government is

24   requesting an upward variance based on the facts of this

25   case.  But we have to address a fact that the memo mentions,

1    and it's that Mr. Severino admitted to firing the gun.

2         But, Your Honor, when we reviewed our notes, after

3    reviewing that memo from the change of plea hearing, we noted

4    that when Government offered what they would be able to prove

5    beyond a reasonable doubt in this case, that fact was not

6    mentioned.  It wasn't mentioned because we had previously

7    spoken to brother counsel about it, about our client's --

8    about our client's -- he does not admit to having stated

9    that.

10         Now, Government did state about his admissions, and

11   he --

12         THE COURT:  You would admit, however, that at

13   sentencing hearings, the burden is preponderance of the

14   evidence.

15         MS. ORIA-CALAF:  I do, Your Honor.  I do.  But at

16   least I have to, for purposes of the record and for

17   Your Honor to consider, state the following:

18         Now, the Government did express during their

19   proffer admissions that my client made.  Those admissions

20   were limited to that he had purchased the gun for $1,600 and

21   that he knew that that firearm had been welded, but nothing

22   was stated about the alleged shooting.

23         Now, as Your Honor also knows, in this case, he was

24   the passenger of --

25         THE COURT:  Excuse me.  By welded, do you mean that

1　it could fire automatically?

2　　　　　MS. ORIA-CALAF:  Right, Your Honor.  That's what I

3　mean.

4　　　　　So there was another person in the car, which was

5　the driver, and who got away.  He ran away.  Mr. Severino

6　stayed there.

7　　　　　Now, these alleged admissions, Your Honor, no

8　evidence of corroboration by the police has been given to us.

9　　　　　For example, this interview was not recorded.

10　Another example, if that was the case, that Mr. Severino did

11　admit to that, no paraffin testing to show that he had

12　gunpowder residue was done.  Also, Your Honor, no report

13　linking these alleged casings that were found to match the

14　firearm that Mr. Severino was in possession of.

15　　　　　Now, Your Honor, like I said at the beginning, I am

16　not mentioning this so that Your Honor -- to make this

17　offense less serious.  It is very serious.

18　　　　　We are standing here before you.  Mr. Severino pled

19　guilty timely.  He accepted full criminal responsibility for

20　that, but I must request the Court to note that.

21　　　　　Because, as Your Honor began this sentencing

22　hearing, we submitted a sentencing memorandum that is in

23　agreement with what has been expressed by Mr. Severino at the

24　pre-sentence interview.  And that is why we mention that.

25　　　　　Now, Your Honor, also, we were provided, just

1    yesterday, with the documents that verify Mr. Severino's

2    education, high school diploma and his barber certificate,

3    and we have already told probation office that we have them.

4    And we will be submitting them as evidence that, indeed, he

5    has been completed his education.

6            Now, Your Honor, we would just like to further

7    point out that Mr. Severino has the ability to lead a life

8    that -- just as he was providing for his children but that

9    ensues appropriate decisions to make in cases where he feels

10   that his family needs protection, or that he needs protection

11   because of his environment.

12           And as we have spoken --

13           THE COURT:  Have there been any threats against him

14   or his family?

15           MS. ORIA-CALAF:  Well, Your Honor, you know, in our

16   sentencing memo, we mention that Mr. Severino lives in a

17   community that is with high crime.  And we have talked about

18   that issue and what he needs to -- what would be an

19   appropriate response to a situation like that.  And an

20   appropriate response would be to relocate, for example.

21           So I understand that Mr. Severino has acknowledged,

22   and there is introspection as to the severity of the offense

23   he has committed and what he needs to do to move forward and

24   not engage in this type of crime.

25           THE COURT:  Well, without a specific threat, I

1  don't think the Government can do anything about relocating

2  him, unless his family relocates on their own.

3          MS. ORIA-CALAF:  Oh, no, Your Honor.  I am sorry if

4  I misspoke.  I didn't mean that Government needed to.  I

5  meant that he needed to.  If he felt that there was any

6  situation like that, that there are appropriate measures that

7  he himself can take into his own hands and that we have

8  spoken about what needs to be done.

9          THE COURT:  Well, it may be to his benefit and his

10 family's benefit to move from where they live, period, for

11 whatever reason, if you say it's a high crime area.

12         MS. ORIA-CALAF:  Right.

13         THE COURT:  Just about every public housing project

14 is a high crime area.

15         MS. ORIA-CALAF:  Right.

16         THE COURT:  Okay.  All right.

17         Anything else?

18         MS. ORIA-CALAF:  That would be all for us.

19 Mr. Severino has short words for the Court.

20         THE COURT:  Okay.  But first I would like to hear

21 from Mr. Gottfried.

22         MS. ORIA-CALAF:  Yes, Your Honor.

23         MR. GOTTFRIED:  Your Honor, as indicated in docket

24 number 26, the Government's sentencing memorandum, we are

25 seeking a variance here, a ten-month variance, for a total of

1  40 months of imprisonment.

2          Briefly, with respect to sister counsel's point

3  about the admission that he made regarding the firearm, this

4  was in paragraph 10 of docket number 21, which is the

5  pre-sentence report, where it states in bold font,

6  "Severino-Pacheco stated that he decided to fire a burst from

7  his firearm outside the window for no apparent reason.

8          "Severino-Pacheco stated that he did not have the

9  high capacity magazine fully loaded, but he only had around

10  14 rounds inside it."

11          There was no objection that was filed to that

12  statement in the pre-sentence report.  And, yes, the

13  Government did mention that in its pre-sentencing memoranda.

14          Regardless of whether or not the Court decides to

15  rely upon that admission, nonetheless, we think that a

16  variance is warranted for two principle reasons.

17          One is just the nature of the offense conduct.  We

18  are dealing with a machine gun -- no doubt about that -- high

19  capacity magazine that the Defendant was carrying in a car.

20  Again, these are undisputed.

21          The second issue here is that we are dealing

22  against -- or dealing with a backdrop of just rampant gun

23  violence.  I know the Court read the memoranda, but I will

24  just briefly highlight certain statistics.

25          One, according to the Puerto Rico Police

1    Department, almost 90 percent of the murders committed in

2    2017 in Puerto Rico were caused by firearms, with the

3    majority of violence perpetrated on public streets or in open

4    areas.

5              Two, according to the United Nations, Puerto Rico's

6    rate of homicides resulting from gun violence has topped the

7    United States and the world.  On this island, the rate of

8    homicides from gun violence has been greater than Honduras,

9    greater than El Salvador.

10             Three, according to statistics compiled by the

11   United Nations, a higher percentage of people die of gun

12   violence on this island than in Lebanon, than in Mexico, than

13   in South Africa.

14             Four, according to 2015 statistics supported by the

15   FBI, Puerto Rico has the second highest rate of murder in the

16   country.  It's second only to the District of Columbia.

17             And, lastly, the murder rate is particularly high

18   is urban areas, such as where this offense was committed, and

19   it affects disproportionately young urban males.

20             And so we think for these reasons, Your Honor,

21   under the 3553(a) factors, namely, to reflect the seriousness

22   of the offense, the nature and circumstances of the offense,

23   and to protect the public from further crimes by the

24   Defendant, a variance is warranted.

25             THE COURT:  Mr. Severino, is there anything that

1   you would like to say?

2           DEFENDANT SEVERINO-PACHECO:  Yes.

3           THE COURT:  Please go ahead.

4           DEFENDANT SEVERINO-PACHECO:  Good morning.

5           THE COURT:  Excuse me, Mr. Severino.  Are you going

6   to read something?

7           MS. ORIA-CALAF:  Yes, Your Honor, he is.

8           THE COURT:  Okay.  Read the entire thing in

9   Spanish, and then we will have the interpreter go up there

10  and translate the entire thing.

11          So go ahead, Mr. Severino.

12          THE COURT INTERPRETER:  Good morning.

13          First, I would like to beg my family and the

14  Court's forgiveness.

15          The decision to have an illegal weapon was

16  mistaken.

17          I will be separated from my family, the sometime

18  that I will be in prison, but when I get out, I want to have

19  a nice life and work for them.

20          Thank you.

21          THE COURT:  First of all, Mr. Severino, I

22  appreciate the fact that you have apologized to your family.

23  Many people come here having done something wrong, and after

24  they did whatever they did that was wrong, they know or they

25  find out that one of the consequences of their actions is the

1  suffering of their family.  Sometimes the family suffers more

2  than the person who comes before me, so I appreciate the fact

3  that you have apologized for that.

4           On April 4, 2017, Defendant Francisco

5  Severino-Pacheco pled guilty pursuant to a straight plea to

6  the indictment in Criminal No. 17-087, which charges a

7  violation of Title 18, United States Code section 922(o), the

8  illegal possession of a machine gun, which is a class C

9  felony.

10          The November 1st 2016 Edition of the Sentencing

11  Guidelines Manual has been used to calculate the guideline

12  adjustments pursuant to the provisions of guideline section

13  1B1.11(a).

14          Based on the provisions of guideline section

15  2K2.1(a)(4)(B), a base offense level of 20 has been

16  determined because Mr. Severino has been convicted of

17  possessing a machine gun, which is a firearm that is

18  described in Title 26, United States Code section 5845(a),

19  and was a prohibited person, a drug user, at the time he

20  committed the offense.

21          He also had in his possession a high capacity

22  magazine.

23          Because Mr. Severino timely accepted responsibility

24  for his offense, however, the offense level is reduced by

25  three levels pursuant to guideline sections 3E1.1(a) and

1  3E1.1(b).

2          There are no other applicable guideline

3  adjustments.  His total offense level is 17.

4          Mr. Severino has been previously adjudicated as a

5  juvenile for a controlled substance violation.  That

6  adjudication, however, does not result in criminal history

7  points pursuant to sentencing guideline section 4A1.2(e)(4).

8          Mr. Severino was also arrested in 2012 for a

9  controlled substance offense, but the case was dismissed for

10 lack of probable cause during the preliminary hearing.

11         Therefore, Mr. Severino does not have any criminal

12 history points, and his Criminal History Category is I.

13         Based on a total offense level of 17 and a Criminal

14 History Category of I, the guideline imprisonment range for

15 Mr. Severino's offense is from 24 to 30 months.  There is a

16 fine range of $10,000 to $95,000, plus a supervised release

17 term of from one to three years.

18         The probation officer has correctly adjusted the

19 guideline computations, and the pre-sentence investigation

20 report satisfactorily reflects the components of

21 Mr. Severino's offense by considering its nature and

22 circumstances.

23         The Court has also considered the other sentencing

24 factors set forth in Title 18, United States Code

25 section 3553(a).

1    The Government has cited Police of Puerto Rico and

2  United Nations statistics concerning the use -- concerning

3  homicides in Puerto Rico by the use of firearms.  Not only

4  have the police and the United Nations indicated that crime

5  in Puerto Rico far exceeds the limits on the mainland, the

6  First Circuit Court of Appeals itself has recognized it.

7    Violent crimes and murders are occurring at all

8  hours of the day, in any place on the island, even on

9  congested public highways, in shopping centers, public

10  basketball courts, and at cultural events.

11    Firearms, including automatic firearms, like the

12  one Mr. Severino possessed, are present everywhere, obtained

13  illegally by persons like Mr. Severino who have had no

14  training in the proper use of weapons and who appear not to

15  have the means to purchase them.

16    The Government cited statistics in which

17  Puerto Rico appears as only behind the District of Columbia

18  in the number of murders per one hundred thousand population.

19  But as I have stated before, from 2011, when there were more

20  than 1,100 murders reported on the island, to 2015, when

21  there were 546 murders, this decrease has been due to a large

22  extent to the firearms initiative which the Puerto Rico

23  Department of Justice and the United States Attorney's Office

24  have implemented.

25    Unfortunately, the number of murders for 2016 were

1    more than those in 2015.  The reason is not known, but I have

2    stated before that during the last year of the previous

3    administration, the Superintendent of Police was perhaps more

4    interested in granting further promotions to officers who

5    perhaps did not -- were not supposed to be promoted, rather

6    than completing a crime prevention program.

7            As the Court of Appeals has indicated, this Court

8    must consider Puerto Rico's high firearms and violent crime

9    rate to impose the sentence in this case.

10           A District Court may take into consideration for

11   sentencing the community and geographic factors where the

12   offense took place.  In this District, for this type of

13   weapons crime, the community that the Court takes into

14   consideration is the entire island of Puerto Rico because gun

15   crimes are not limited to one particular area or region of

16   the Commonwealth.

17           As the First Circuit has also said, deterrence is

18   an important factor in the sentencing calculus.  Title 18,

19   section 3553(a) requires the Court to consider preventing

20   criminal behavior by the population at large, not just by the

21   defendant being sentenced.

22           Mr. Severino is 29 years old.  He has a high school

23   education, was employed performing odd jobs in maintenance

24   prior to his arrest for his offense and has a history of

25   using marijuana.

1       Today Mr. Severino has requested a sentence at the
2   low end of the guideline range, 24 months.
3       The Government has requested a variant sentence of
4   40 months, ten months above the high end of the guideline
5   range.
6       The Court has considered what it has mentioned
7   before about Puerto Rico's high crime rate, Mr. Severino's
8   personal characteristics, and the nature of his offense.
9       The Court has given weight to the fact that
10  Mr. Severino admitted to possessing an automatic firearm
11  knowing that it was illegal to do so and that for no apparent
12  reason he fired the weapon without hesitation regardless of
13  the consequences.  That act was irresponsible and put at risk
14  lives of innocent person who could have been caught in the
15  path of the bullets.
16      A modern machine gun can fire more than 1,000
17  rounds a minute allowing a shooter to kill dozens of people
18  within a matter of seconds.
19      As the Ninth Circuit Court of Appeals has
20  indicated, short of bombs, missiles and biochemical agents,
21  we can conceive of few weapons that are more dangerous than
22  machine guns.  Machine guns largely exist on the black
23  market.  Machine guns are highly dangerous and unusual
24  weapons that are not typically possessed by law-abiding
25  citizens for lawful purposes.

The Court agrees with the Government and finds that a sentence above the guideline range reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by Mr. Severino, and addresses the issues of deterrence and punishment.

Accordingly, it's the judgment of the Court that Francisco Severino-Pacheco is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 40 months.

Upon release from confinement, Mr. Severino shall be placed on supervised release for a term of three years to be served under the following terms and conditions:

He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

He shall not commit another Federal, State or local crime.

He shall not possess firearms, destructive devices or other dangerous weapons.

He shall participate in vocational training and a job placement program as recommended by the probation officer.

He shall provide the probation officer access to any financial information upon request.

He shall remain under curfew at his residence of record from 6:00 p.m. to 6:00 a.m. for a period of six months

1    to commence upon his release from imprisonment.

2              During this time, he shall remain in his residence,

3    except for employment or other activities approved in advance

4    by the probation officer.

5              He shall wear an electronic device 24 hours a day

6    and shall observe the rules specified by the probation

7    officer.

8              He is ordered to pay the daily cost of the

9    electronic device.

10             Payment shall be pleased on his ability to pay or

11   the availability payments by third parties as approved by the

12   Court.

13             In addition to any other telephone or cell phone

14   that he may have, Mr. Severino shall maintain a telephone at

15   his resident without a modem, an answering machine, or

16   cordless future during the term of electronic monitoring.

17             He shall cooperate in the collection of a DNA

18   sample as directed by the probation officer pursuant to the

19   revised DNA collection requirements and Title 18, United

20   States Code section 3563(a)(9).

21             He shall submit himself and his property, house,

22   residence, vehicles, papers and effects, computers and other

23   electronic communication or data storage devices or media to

24   a search at any time, with or without a warrant, by the

25   probation officer and, if necessary, with the assistance of

1  any other law enforcement officer, but only in the lawful

2  discharge of the supervision functions of the probation

3  officer, who must have a reasonable suspicion of unlawful

4  conduct or of a violation of a condition of supervised

5  release.

6           The probation officer may seize any electronic

7  communication or electronic device or medium, which will be

8  subject to further forensic investigation or analysis.

9           Failure to permit a search and seizure may be

10 grounds for revocation of supervised release.

11          Mr. Severino shall warn any other resident or

12 occupant that his premises may be subject to searches

13 pursuant to this condition.

14          He shall not possess or use controlled substances

15 unlawfully and shall submit to a drug test within 15 days of

16 release from imprisonment.

17          After his release, Mr. Severino shall submit to

18 random drug testing, not less than three samples during the

19 supervision period, but not more than 104 samples each year,

20 in accordance with the Drug Aftercare Program Policy of the

21 United States Probation Office as has been approved by this

22 Court.

23          If the illegal use of controlled substances is

24 detected in any samples, Mr. Severino shall participate in an

25 inpatient or an outpatient substance abuse treatment program

1   for evaluation or treatment as arranged by the probation

2   officer.

3           Payment shall be based on his ability to pay or the

4   availability of payments by third parties as approved by the

5   Court.

6           He shall meet any legal obligation to support or

7   make payment toward the support of any person, including any

8   dependent child, any parent or caretaker of a dependent

9   child, or a spouse or former spouse.

10          Having considered Mr. Severino's financial

11  condition, a fine is not imposed.

12          A special monetary assessment in the amount of $100

13  is imposed, however, as required by law.

14          Mr. Severino, you have a right to appeal your

15  conviction and sentence.

16          A notice of appeal must be filed in this court

17  within 14 days from when the judgment of the Court is

18  entered.

19          You may apply for leave to appeal *in forma pauperis*

20  if you are unable to pay the cost of an appeal.

21          Because you are represented by court-appointed

22  counsel, she will continue to represent you through any

23  appeal unless a substitute counsel is later appointed.

24          Anything else, Ms. Oria?

25          MS. ORIA-CALAF:  No, Your Honor.

1          Permission to withdraw.

2          THE COURT:  Is there any particular place that you

3  would like me to designate Mr. Severino?

4          MS. ORIA-CALAF:  Yes, Your Honor.  That would be

5  Fort Dix in New Jersey.  He has a dear aunt who could visit

6  him.

7          THE COURT:  I will recommend that the Bureau of

8  Prisons designate Mr. Severino to Fort Dix, that he

9  participate in any vocational training at the institution to

10 which he may -- in which he may be interested, and that he

11 take courses in English as a Second Language.  That will help

12 him when he is released.

13         You are excused.

14         MS. ORIA-CALAF:  Thank you, Your Honor.

15         Is this a one-count case, Mr. Gottfried?

16         MR. GOTTFRIED:  Yes, Your Honor.

17         THE COURT:  Thank you.

18         You are excused.

19

20         (PROCEEDINGS ADJOURNED AT 10:35 A.M.)

21

22

23

24

25

REPORTER'S CERTIFICATE

1

2

3          I, JOE REYNOSA, Official Court Reporter for the

4   United States District Court for the District of Puerto Rico,

5   appointed pursuant to the provisions of Title 28, United

6   States Code, Section 753, do hereby certify that the

7   foregoing is a true and correct computer-aided transcript of

8   proceedings had in the within-entitled and numbered cause on

9   the date herein set forth; and I do further certify that the

10  foregoing transcript has been prepared by me or under my

11  direction.

12

13

14

15

16

17

                              S/Joe Reynosa
18          _____

19          **JOE REYNOSA, CSR, RPR**
            United States Court Reporter
20          Federico Degetau Federal
            Building, Room 150
21          150 Carlos Chardón Street
            San Juan, Puerto Rico 00918-176
22          (787) 772-3000

23

24

25

Joe Reynosa, CSR, RPR
Official Court Reporter